Turley J.
delivered the opinion of the court.
This bill is filed by the Franklin and Columbia Turnpike Company against the County Court of Maury, to have a road opened by order of the court, turning the first toll gate, on the turnpike from Columbia and Franklin, closed, and to enjoin the re-opening of it.
The facts of the case are, that the Franklin and Columbia Company was legally incorporated by the legislature of the State of Tennessee, for the purpose of building a turnpike road from the town of Franklin, in the county of Williamson, to the town of Columbia, in the county of Maury, with certain franchises, among which was that of erecting a-certain number of toll gates for the reception of toll from travelers thereon.
Under this charter, stock was taken by divers individuals and the state, in an amount sufficient to construct the road, which was done, and toll gates established thereon, at the different intervals, prescribed by the statute of incorporation. Among which was one in two miles of Columbia, at which the company was receiving toll under its charter. Subsequently the county court of Maury laid out and established a public road for the county, which leaves the turnpike road between the town of Columbia and the gate, a short distance from the gate, which it turns, by leaving it to the left, and in a short distance thereafter re-enters the turnpike road. That this road was established for the purpose of avoiding the gate, and the consequent payment of toll, there can be no *353 doubt — in fact it is not controverted in the argument — for the turnpike road is also a public road, and a nearer and a better one than that established by the county court. The establishment of this road by the county court of Maury, has greatly lessened the amount of toll received by the company at the gate, and if it be permitted to remain, will permanently impair the rights of the company in the enjoyment of that portion of the franchise secured to it by its charter.
Under this state of facts, the question presented for consideration is, whether the complainant is entitled to the relief asked by the bill?
The creation of good pitblic roads is a matter of great importance, both to the public and to private individuals; and as such, has been greatly encouraged by the state, both by granting charters incorporating companies for that purpose, and by taking stock in them. The creation of these roads is necessarily very expensive, both from the manner of construction and from the damages paid to those over whose lands they are extended ; and the only remuneration allowed for these expenditures, is the amount received from wayfarers in toll at the gates erected by law for that purpose. If the different companies may be deprived of these tolls, by other roads made for no other purpose but to turn the gates and avoid thereby the payment of them, it will necessarily follow that the individuals who have appropriated their money for the erection of such roads, may, after they have been built, be entirely prevented from receiving any recompense whatever for such outlay, although the same be guarantied to them expressly by charter ; for if one gate may be so turned, every one may be, vrith equal propriety. This would be a virtual destruction of the chai'ter, for in as much as the company does not own the land through which the road runs, the gates may be turned at any place they may locate them. There is no principle better settled, than that an act of incorporation is a contract on the *354 part of the state with the corporators, and that no law can be subsequently passed by which it is impaired.
The substance of the contract between the legislature and the Franklin and Columbia Turnpike Company, is the right of the company, upon the building of the road, to erect gates at the specified distances for the reception of the tolls allowed by the charter.
The legislature then could do nothing to impair this right, by which it is not meant, that other public roads may not be chartered for public convenience; a necessary but indirect consequence of which may be a diminution of toll on the road by a diminution of the travel; but that no such charter eould be granted, the only object and end of which would be to evade the payment of the tolls for travel on the road by avoiding the gates, because it would be a violation of public faith, and would impair the obligation of the contract between the state and the corporation. If the legislature of the state could not do this, to permit it to be done, by individuals, or by a county court, would be to permit that to be done by an inferior power, which cannot be done by the sovereign.
That the turning of the gate in controversy, by the order of the county court of Maury, is an abuse of power, is not seriously controverted. But it is argued, that the court has exclusive jurisdiction over the subject of the laying out and establishing roads in the county of Maury, and that no other tribunal has authority to revise or control this exercise of power, but in the manner prescribed by law, viz, by appeal or certio-rari. The power to open roads is a prerogative of sovereignty; it has been delegated by the legislature to the county courts in this state, and is exercised by them, notas a judicial, but municipal function.
It is not to be controverted, that they are the proper judges of what the public convenience requires; in the laying off and establishing of roads for the public convenience; and, that or *355 dinarily the only redress for those who conceive themselves agrieved by the establishment of a road, is by appeal or certio-rari, to a revising tribunal. But this is unquestionably in cases where the establishment of the road may be considered of doubtful policy, and an individual who may feel himself agrieved thereby, may wish to contest it; in such case the establishment of the road being a lawful act, by a lawful tribunal, the only mode of redress is through the revising tribunal appointed by statute, viz: the circuit court, and in the mode prescribed by law. ,
But in the case under consideration, the establishment of the road is not a mere act of indiscretion, but one in violation of a right secured to the complainant by charter, for which an individual, if guilty of it, would be hable in damages, by an action on the case on the part of the corporation — it being looked upon in the eye of the law, as a nuisance upon its rights — and we are by no means sure, that such an action would not lie against the county court. Indeed, we are inclined to think it would.
It is very possible, that in this case, the company, if it had had knowledge that the road was about to be laid off, might have made itself a party to the proceeding, and have moved the case by appeal to the circuit court; but this it was not bound to do.
The right to redress is based upon higher grounds. The act of the county court, establishing this road, was an unlawful act; it constitutes an illegal obstruction in the way of the enjoyment of franchises secured to the company by contract with the state; and the chancery court has power innate to reverse it; if it had not, irremedial mischief to the company would be the consequence.
No relief can be had against the individuals over whose land the road runs, either by suit or injunction, for the road is not established by their acts, but by the act of a power superior *356 to them; if sued, they might defend themselves under it; if a bill be filed against them, to close the road, they might well answer, that they did not open it, and have no power to close it; and they could not be held in contempt for not doing it.
If, then, there be no remedy in chancery against the county court, not only this gate, but every one on the road may be virtually closed forever.
This is too great an absurdity to be thought of.
Mr. Story in sec. 925, of his work upon equity jurisprudence, says, “In regard to private nuisances, the interference of courts of chancery by way of injunction, is undoubtedly founded upon the ground of restraining irreparable mischief; or of suppressing oppressive and interminable litigation, or preventing multiplicity of suits.”
In sec. 926, he gives examples of such nuisances, “as where loss of health, loss of trade, destruction of the means of subsistence, a permanent ruin to property, may, or will ensue from such wrongful act; as if a party builds so near the house of another party as to darken his windows, against, the clear right of'the latter, a court of equity will interfere by injunction to prevent the nuisance, as well as to remedy it, if already done; for the injury is material, and operates daily to destroy or diminish the comfort and use of the neighboring house; and the remedy by multiplicity of actions for the continuance of it would furnish no substantial compensation.”
In sec. 927, he further says: “Cases of a nature calling for a like remedial interposition- of courts of equity, are the obstructions of water courses, the diversion of streams from mills, &c. So, in like manner, an injunction will be granted in favor of a turnpike corporation to secure the due enjoyment of their privileges, by preventing the establishment of short byroads (commonly called shunpikes) to destroy their tolls.” In the case of The Croton Turnpike Company vs. Ryder, 1st John. Ch. Rep. 611, it is held by chancellor Kent, “that an injunc- *357 lion will be granted, to secure to a party the enjoyment of a privilege conferred by statute, of which he is in the actual possession, and when his legal title is not put in doubt. And that where a turnpike company, incorporated with the exclusive privilege of erecting toll gates and receiving tolls, had duly opened and established the road, with gates, &c., and certain persons, with the view to avoid the payment of toll opened a by-road near the turnpike, and kept it open at their expense, for the use of the public, by which travelers were enabled to avoid passing through the gate and paying toll to the plaintiffs, a perpetual injunction would be granted to prevent the defendants from using, or allowing others to use such road, and the same, be ordered to be shut up.”
So, also, in the case of The Newburgh Turnpike Company vs. Miller, 5th John. Ch. Rep., it was held, after a most elaborate investigation, by the same great judge, “that where one has a grant of a ferry, bridge, or road, with the exclusive right of taldng toll, the erection of another ferry, bridge, or road, so near it, as to create a competition injurious to such franchise, is a nuisance and the court will prevent the use of the rival establishment.” It makes no difference, that these cases . are against individuals; they establish the principle, that a chartered right shall not be permanently injured by a private nuisance ; and it can be of little import whether this nuisance be by the act of an individual, or by a municipal power; the act creating it is alike illegal in the one case as the other, and will alike be relieved against.
But if a case in point upon this branch of the subject be needed, we have it in that of The Attorney General vs. Forbes, 2d Milne & Craig, 123, in which an inquisition was granted by the lord chancellor Cottenham on information and bill, upon the ground of public nuisance, to restrain the magistrates of a county from cutting the timber supporting the roadway of a bridge, which timbers and roadway, at the place proposed to *358 be cut, were within their jurisdiction, but of which the other extremity was within a different county. The chancellor, in delivering his judgment, says: “with respect to the question of jurisdiction, it was broadly asserted, that an application to this court, to prevent a nuisance to a public road, was-never heard of. A little research, however, would have found many such instances. Many cases might have been produced, in which the court has interfered to prevent nuisances to public rivers and public harbors. And the court of exchequer, as well as this court acting as a court of equity, has a well established jurisdiction, upon a proceeding by way of information, to prevent nuisances to public harbors and public roads. In Box vs. Allen, this court interfered, to stay the proceedings of parties, whose jurisdiction is quite as high, as that of the court of quarter sessions, over bridges, namely, the commissioners of sewers. Those commissioners possess a jurisdiction founded on acts of parliament, and they have a right, within the due limits of their authority, to do all acts necessary to their functions; nevertheless, if they so execute, what they conceive to be their duty, as to create a nuisance, this court has the undoubted right to interpose. And that this jurisdiction is exercised, not for the purpose of overruling the power of others, by way of appeal from their authority, but for the purpose of exercising a salutary control over all, for the protection of the public.”
Upon the whole view, then, of this subject, we are clearly of opinion that the complainant is entitled to have the road in controversy closed, and to a perpetual injunction against re-opening it, and do decree accordingly.